IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                              Case Nos.:        4:14cr64/RH/CAS
                                                   4:17cv576/RH/CAS

DERRICK ADAMS,
     Reg. No. 23100-017,
     Defendant.

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion to Vacate,
Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and supporting
memorandum of law.   ECF Nos. 190, 192.   The Government has filed a
response (ECF No. 198) and Defendant filed a reply.   ECF No. 199.   The
case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive
matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed.
R. Civ. P. 72(b).   After review of the record, the court recommends that the
§ 2255 motion be denied without an evidentiary hearing.   *See* Rules
Governing Section 2255 Cases 8(a) and (b).

I.    BACKGROUND

Defendant Derrick Adams ("Adams") was charged on October 8, 2014 in six counts of a thirteen-count indictment.   ECF No. 1.   Count One charged that between on or about January 1, 2013 and October 7, 2014, Adams, Mary Davis and Anthony Wyatt conspired together and with others to distribute and possess with intent to distribute more than 280 grams of cocaine base and cocaine in violation of Title 21 United States Code, §§ 841(a)(1), 841(b)(1)(a)(iii), 841(b)(1)(C) and 846.   Adams alone was charged in Counts Two through Six with distribution of cocaine base and cocaine in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   The charges stemmed from small-scale transactions on five separate dates.   The indictment also included a criminal forfeiture provision.

Co-defendants Davis and Wyatt entered guilty pleas, and Adams exercised his right to a jury trial.   He contested his guilt only as to Count One, denying both the existence of a conspiracy and his involvement with the quantity of drugs alleged in the indictment, while openly admitting guilt to the other five charges.   *See* ECF No. 157 at 32, ECF No. 158 at 110-111.   Trial commenced on April 27, 2015, and on April 28, 2015, the jury

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

returned a guilty verdict on all counts and found that the offense conduct involved 280 grams or more of crack cocaine.   ECF No. 104.   Adams moved for a judgment of acquittal as to the quantity alleged in Count One, and the court took Adams' motion under advisement.   ECF No. 158 at 97-98, 165.   At sentencing, the court denied the motion after considering additional written submissions and argument of counsel.   ECF Nos. 134, 140, 142, 146; ECF No. 159 at 2-4.   The court sentenced Adams to concurrent terms of 120 months' imprisonment on each count, concurrent terms of supervised release of five years (Count One) and three years (Counts Two through Six), and a $600.00 special monetary assessment. ECF No. 148, 159 at 35, 37-38.

Adams appealed, challenging only his conviction on Count One and the district court's denial of his motion for judgment of acquittal on this count.   ECF No. 166.   The Eleventh Circuit affirmed on December 22, 2016.   Adams timely filed the instant motion contending that counsel provided constitutionally ineffective representation due to various errors or omissions.

II.    ANALYSIS

A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). A motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

barred.  *Id.*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614,

621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).

Ineffective assistance of counsel claims generally are not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.  *Massaro v.*

*United States*, 538 U.S. 500, 503 (2003); *see also United States v.*

*Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d

1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of

ineffective assistance of counsel, a defendant must demonstrate both that

counsel's performance was below an objective and reasonable

professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529

U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th

Cir. 2013).   In applying *Strickland*, the court may dispose of an ineffective

assistance claim if a defendant fails to carry his burden on either of the two

prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d

1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the

defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d

at 1316 n.18.

      To establish prejudice, a defendant must show that, but for counsel's

deficient performance, the outcome of the proceeding would have been

different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result

must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S.

86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on

"outcome determination," however, is insufficient; "[t]o set aside a

conviction or sentence solely because the outcome would have been

different but for counsel's error may grant the defendant a windfall to which

the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70

(1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir.

2010).   A defendant therefore must establish "that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

Or in the case of alleged sentencing errors, a defendant must demonstrate

that there is a reasonable probability that, but for counsel's errors, the

result of the proceeding would have been less harsh due to a reduction in

the defendant's offense level.    *Glover v. United States*, 531 U.S. 198,

203–04 (2001).    A significant increase in sentence is not required to

establish prejudice, as "any amount of actual jail time has Sixth

Amendment significance."    *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual

support for his contentions regarding counsel's performance.    *Smith v.*

*White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson*

*v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Furthermore, counsel is not constitutionally deficient for failing to preserve

or argue a meritless claim.    *Denson v. United States*, 804 F.3d 1339, 1342

(11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d

1225, 1233 (11th Cir. 2008)).    This is true regardless of whether the issue

is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Florida Dep't of*

*Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather
whether counsel's performance was so manifestly ineffective that "defeat
was snatched from the hands of probable victory."   *United States v.
Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the
standard is framed, under the prevailing case law it is abundantly clear that
a moving defendant has a high hurdle to overcome to establish a violation
of his constitutional rights based on his attorney's performance.   A
defendant's belief that a certain course of action that counsel did not take
might have helped his case does not direct a finding that counsel was
*constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and
records conclusively show that the prisoner is entitled to no relief."   *See* 28
U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir.
2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).
Not every claim of ineffective assistance of counsel warrants an evidentiary
hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d
707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must
allege facts that, if true, would prove he is entitled to relief.   *See
Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A

hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the

record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the

allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*,

377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to

nothing more than conclusory allegations do not warrant a hearing.   *Lynn*,

365 F.3d at 1239.   Finally, disputes involving purely legal issues can be

resolved by the court without a hearing.

   B. <u>Adams' claims for relief</u>

       The entirety of Adams' motion focuses on the allegedly deficient

performance of his attorney, Charles McMurry, Esq.   Adams claims that

multiple actions or omissions of counsel were constitutionally ineffective.

As will be discussed further below, the allegations on both the § 2255 form

and in the supporting memorandum are vague, conclusory and

unsupported, and as such they are insufficient to meet Adams' heavy

burden under *Strickland*.   Furthermore, in his reply Adams made no

attempt to rebut the Government's response to his motion, including the

sworn affidavit from his former attorney Mr. McMurry.   Rather, he raised an entirely new claim, which is both untimely and without merit.

1. Adams' § 2255 form

On the § 2255 form, Adams contends his attorney failed to provide evidence and witnesses that would have aided his defense, without identifying the evidence or witnesses counsel failed to present.   ECF No. 190 at 4.   He contends counsel "failed to object to the admission of evidence about transactions and amounts sold, leading to a longer sentence," again not identifying with specificity the evidence about which he complains or the basis for a viable objection to the evidence.   Adams asserts in a conclusory fashion that his attorney failed to cross-examine witnesses or impeach the testimony of witnesses against him.   The record reflects that counsel did cross-examine witnesses, and again Adams offers no specific examples of how counsel could or should have impeached the witnesses against him.

Finally, he complains that counsel should have objected to the use of the term "crack cocaine" at trial because it was prejudicial.   Such an objection would have failed.   There is no evidence that the substance in question was anything other than the form of cocaine base commonly

known as crack cocaine.   Therefore, he cannot demonstrate prejudice

from counsel's failure to raise the distinction between crack and other forms

of cocaine base at trial.   Counsel cannot be held to be constitutionally

ineffective for failing to make a meritless objection.

    2. Adams' Supporting Memorandum

    The allegations in Adams's memorandum offer only slightly more

insight into his complaints about his attorney's performance. Of the

seventeen paragraphs in his memorandum purporting to enumerate the

shortcomings of counsel, Government witness Dimtree Speed is mentioned

in eight of them.   The undersigned therefore will briefly outline Speed's

testimony.

    a. Government Witness Dimtree Speed

    Speed testified at trial that he was awaiting sentencing after pleading

guilty to drug charges in the Middle District of Georgia.   ECF No. 158 at

240-242.[1]   He testified that he hoped his cooperation with law enforcement

against Adams would positively affect his sentence in his own case.

Speed said that he started selling crack cocaine to Adams about six or

---

[1] Page citations are the actual page numbers of the transcript rather than the numbers assigned by the electronic docketing system.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

seven months after Speed got out of prison and he continued to sell to Adams regularly for about two years.    *Id.* at 249-251.    He described how the transactions took place, either in Georgia or in Tallahassee.

On cross-examination, defense counsel asked Speed if he was hoping his testimony against Adams would help him get a lower sentence in his case.    ECF No. 158 at 262.    Speed's answer was less forthcoming than he had been on direct examination.    Counsel also attempted to pin Speed down to details about the frequency, time frames and quantities of drugs involved in his dealings both with Defendant Adams and others.    *Id.* at 266-274.    During his closing argument, counsel highlighted Speed's poor recollection and lack of credibility, and he argued there was no conspiracy because Adams merely purchased drugs from Speed.    *Id.* at 333-334.

While the jury was deliberating, the court questioned Speed's involvement with the conspiracy charged in the indictment.    ECF No. 158 at 362-372.    It indicated its intent to keep the defense motion for a judgment of acquittal under advisement until sentencing.    *Id.* at 372.

Speed's testimony about the quantity of drugs he had sold to Adams was key to the jury's verdict and the district court's quantity determination

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

at sentencing.   Nonetheless, at sentencing, the district court noted that the "verdict does not mean that the jury accepted [Speed's] testimony lock, stock and barrel," and it stated three times that it did not find Speed "particularly credible."   ECF No. 159 at 7, 26.   Speed was unable to identify individual drug transactions, and his testimony was not internally consistent.   *Id.*   Based on the court's credibility assessment, it accepted the jury's finding that the drug amount was at least 280 grams, as it was required to do.   It also found that, notwithstanding Speed's testimony, the amount of drugs involved in the conspiracy did not exceed 840 grams, which would have raised Adams' base offense level from 30 to 32.   The court carefully considered the existence of a conspiracy involving the individuals named in the indictment, how Speed and another individual named Christopher Adams figured into the equation, or whether there were multiple conspiracies.   *Id.* at 14-26.

b. Adams' allegations regarding Witness Speed

As noted previously, many of Adams' allegations in his memorandum center around Speed's testimony, and several are overlapping or related. None is supported by proof sufficient to meet the *Strickland* standard.

Adams complains that counsel did not properly cross-examine Speed about his motives for testifying and, similarly, that counsel did not impeach Speed.   These allegations do not provide a basis for relief.   Adams does not suggest what was lacking from counsel's cross-examination.   Counsel questioned Speed about his motives for testifying, and, as noted above, Speed's evasive answer about this issue was not the same as it had been on direct examination.   Counsel again directed the jury's attention to the possible impetus for Speed's testimony during closing argument, when he alluded to Speed's motivation for testifying and rhetorically questioned the credibility of Speed's testimony that Speed did not think he was going to benefit from his testimony.   ECF No. 158 at 334.   With respect to impeachment, Adams does not suggest what available impeachment evidence counsel neglected to avail himself of, or how counsel could have "properly prepared" for Speed's testimony.

Adams complains that counsel did not object to the Government's use of Speed as a witness in the first place.   He does not offer a basis for counsel to have made a viable objection.   As noted by the district court at sentencing, the Government provided defense counsel with Speed's name

as soon as it was known.   ECF No. 159 at 14.   Counsel was not

constitutionally ineffective for declining to make a meritless objection.

Counsel allegedly performed deficiently because he did not "call a

witness to show that Adams did not take trips to Georgia with Speed."

ECF No. 192 at 4.   This appears to be a misstatement, as the testimony

established that Adams took trips to Georgia to purchase drugs *from*

Speed, not that he traveled *with* Speed.   Additionally, although Adams

claims to have evidence showing he was working during the times of those

trips, he does not identify the nature of the evidence or any additional

specifics.   Contrary to Adams' assertion about the existence of potentially

exculpatory witnesses, counsel avers in his affidavit that his client never

offered any witnesses or shared his knowledge about the facts of the case.

ECF No. 198-1 at 2.   Rather, Adams merely accused all the witnesses of

lying.   *Id.*   Counsel also relays that he "spent over a year coaxing Mr.

Adams to provide any supporting witnesses to help his case."   *Id.* at 1.

His efforts appear to have been unsuccessful.   The only witness who

testified in Adams' behalf was his former employer Joseph Nawalany.

ECF No. 158 at 310-313.   Nawalany testified that Adams had been

employed at his automotive repair shop as a general maintenance

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

technician from May 11, 2011 through the last week of 2012, when the shop was going out of business.   He said that Adams was a good employee who was eligible for rehire.   This testimony proved nothing relevant to Adams' behavior or whereabouts during the time frame of the indictment, between January 1, 2013 and October 7, 2014.   *See* ECF No. 1.

      c. Adams' remaining allegations

Adams complains counsel "should have objected to the testimony about trips to Georgia that Adams did not take."   ECF No. 19 at 4.   To the extent the court can discern his complaint, Adams' disagreement with factual testimony is not alone a basis for it to be excluded.

Adams also asserts that counsel should have shown there was no evidence regarding Adams' involvement with the conspiracy in 2013 and 2014.   He is mistaken.   Wyatt testified about his dealings with Adams during 2014.   Also, Speed's testimony, regardless of its vagueness or inconsistency, provided evidence of Adams' drug dealing activities, including in 2013 and 2014.   The issue of Speed's credibility and the weight to be given his testimony was an argument for the jury.   Adams does not suggest what he believes counsel could or should have done that

would have changed the outcome of the proceedings.   He has not met his burden of showing counsel was constitutionally ineffective.

Adams asserts that counsel "failed to object to and argue for acquittal of the conspiracy charge."   ECF No. 192 at 4.   Again, his argument is factually mistaken.   As noted above, counsel moved for judgment of acquittal, and the court took the motion under advisement until sentencing. The fact that counsel's objection and argument were ultimately unsuccessful does not, without more, establish that counsel was constitutionally ineffective.   Adams has not suggested what else counsel could or should have done to change the outcome of the proceedings.

Adams also claims his attorney was ineffective because counsel "should have asked the Court to assure the presence of others in Adams' conspiracy to be available for the trial so that they could have testified about Adams' limited involvement."   Two co-conspirators were named in the indictment:   Anthony Wyatt and Mary Davis.   ECF No. 1.   Wyatt testified as a Government witness at trial about his dealings with Adams between May and July of 2014.   ECF No. 158 at 275-290.   The

Government did not call Mary Davis as a witness,[2] but there was nothing precluding Adams from calling her.   He does not suggest what testimony Davis could have offered about her interactions with Adams would have changed the outcome of the trial in light of the other evidence presented. Furthermore, a review of Davis' Presentence Investigation Report (ECF No. 115) suggests that her testimony would have been extremely damaging to Adams.   If Davis testified consistently with the information given in her proffer, she would have corroborated that Adams traveled at least seven times to Cairo Georgia to obtain crack and powder cocaine from an individual in Cairo, Georgia, (Speed), and she would have testified that she sold crack cocaine for Adams, in apparent exchange for personal use quantities of drugs.   ECF No. 115, PSR ¶¶ 27-33.   To the extent his allegation can be construed as asserting counsel was ineffective for not calling Mary Davis as a witness, he has shown neither deficient performance nor prejudice.

Adams complains counsel was ineffective because he did not object to the lack of proof regarding the test performed on the drugs he sold, and

---

[2] The court noted at trial that it had presided over Ms. Davis' plea proceeding and it understood the Government not calling her as a witness.   ECF No. 158 at 170.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

for not requiring the Government to prove what substance he was selling. ECF No. 192 at 4.   At trial, during the testimony of DEA Agent Michael Kreis, the Government introduced lab results from the DEA's tests of drugs sold by Adams to undercover operatives.   ECF No. 157 at 50.   Agent Kreis also testified about the difference between cocaine and crack cocaine.   *Id.* at 51.   There is no basis for Adams' assertion that the drug he sold to the informant was "improperly" referred to as crack cocaine, ECF No 192 at 6, and counsel was not constitutionally ineffective for not making this meritless argument.

Finally, Adams asserts that if counsel had "properly attacked Adams' inclusion in the conspiracy he would have been shown to have sold 14.7 grams of cocaine" leading to a much lesser sentence.   ECF No. 192 at 5-6.   Again, Adams has not suggested what counsel could or should have done that would have altered the outcome of the proceedings.   The jury found the conspiracy involved over 280 grams of crack cocaine, a factual finding that was binding upon the district court.   The evidence, taken in the light most favorable to the Government, established Adams as the "hub" of the conspiracy.   Adams obtained drugs from Speed which he in turn

provided to Davis and Wyatt for personal use and/or sale.    He has

established neither deficient performance nor prejudice.

C. Adams' reply

In his reply, Adams does not attempt to rebut the Government's

position, instead asserting, for the first time, that counsel was

constitutionally ineffective because he did not request a multiple conspiracy

jury instruction.    ECF No. 199 at 2.    Such an instruction, Adams posits,

would have allowed the jury to find him guilty of Count One without finding

280 grams or more as alleged in the indictment.

A traverse typically may not be used to raise for the first time facts to

support a ground for relief, or an entirely new issue.    *See Cacoperdo v.*

*Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the

proper pleading to raise additional grounds for relief); *Herring v. Sec'y,*

*Dep't of Corr's*, 397 F.3d 1338, 1342 (11th Cir. 2005) (arguments raised for

the first time in a reply brief are not properly before a reviewing court);

*United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002)(court

need not address issue raised for first time in reply brief); *United States v.*

*Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in

reply brief waived); *see also*, *Klauer v. McNeil*, No.3:07CV541/LAC/EMT,

2009 WL 2399928, at *30 (N.D. Fla. July 31, 2009) (declining to address

claim raised for the first time in a habeas petitioner's reply); *Gettis v.*

*McNeil*, No. 3:08cv91/MCR/EMT, 2010 WL 4342099 at *11 (N.D. Fla. Aug.

25, 2010) (same).

Even if the court accepted Adams' attempt to raise a new claim in his

reply as procedurally proper, the new claim would be time barred.   Adams'

conviction became final on March 22, 2017, ninety days from the date the

Eleventh Circuit entered its judgment, when the time for filing a petition for

writ of certiorari expired.   *See Kaufmann v. United States*, 282 F.3d 1336,

1338 (11th Cir. 2002); *Mims v. United States*, 758 F. App'x 890, 892 (11th

Cir. 2019) (citing *Kaufman*).   A timely § 2255 motion, or amendments

thereto, must have been filed one year from the date the moving party's

conviction became final.   28 U.S.C. § 2255(f).   Adams' reply was filed on

May 29, 2018, pursuant to the prison mail box rule.   Therefore, any new

claims raised therein are facially untimely.

An otherwise untimely claim in an amended or supplemental § 2255

motion relates back to the original filing and may be considered on the

merits only if it arises from the same set of facts as the original claims, not

from separate conduct and occurrences in both time and type.   *Davenport*

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

*v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).   Claims of

ineffective assistance of counsel in an amended motion or motion to

supplement which arise from separate conduct and occurrences in both

time and type from those alleged in an original motion do not relate back.

*Id.* at 1346 (citing *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999)

(holding that a claim that counsel was ineffective for failing to file an appeal

did not relate back to claim that counsel failed to pursue a downward

departure or object to the kind of drugs at issue); *United States v. Duffus*,

174 F.3d 333 (3rd Cir. 1999) (holding that a claim that counsel was

ineffective for failing to pursue a motion to suppress did not relate back to

motion claiming that counsel was ineffective for failing to challenge

sufficiency of the evidence on appeal or to object to the use of recently

amended guidelines in calculating his sentence); and *United States v.

Pittman*, 209 F.3d 314 (4th Cir. 2000) (holding that two new ineffective

assistance of counsel claims did not relate back to three claims raised in

the timely § 2255 motion)); *Chery v. United States*, 740 Fed. App'x 687,

689 (11th Cir. 2018) (following *Davenport*).   Adams' new claim is such a

claim.   He has not attempted to argue his entitlement to equitable tolling,

and therefore the new claim is time barred.   *Jones v. United States*, 304

F.3d 1035, 1038 (11th Cir. 2002) (citing *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000)).

Even if the court were to disregard the untimeliness of the new claim, Adams would not be entitled to relief. Adams' contention that the jury was not given the option of finding him guilty of Count One without finding that he was responsible for 280 grams or more as alleged in the indictment is factually mistaken. *See* ECF No. 199 at 2. The verdict form reflects that the jury was asked to first decide the question of guilt, and only if it found Adams to be guilty, to then indicate whether Adams was responsible for 280 grams of crack cocaine or more by checking "yes" or "no" on the verdict form. ECF No. 104 at 2.

Adams asserts that because Dimtree Speed had "nothing to do at all with Davis or Wyatt," Speed could not have been part of the same conspiracy. This position is legally mistaken. It is not necessary that all members of a conspiracy know each other, or the details of every part of the conspiracy. *United States v. Jones*, 913 F. 2d 1552,1561 (11th Cir. 1990). In this case, the jury could have reasonably found that Adams was "the hub of all the conspiratorial acts the government sought to prove at trial." *United States v. Richardson*, 532 F.3d 1279, 1288 (11th Cir. 2008);

*United States v. Adams*, 666 Fed. App'x 858, 861 (11th Cir. 2016).   In

*Richardson*, the defendant, who was tried alone, claimed that the court

erred in rejecting his request for the following multiple conspiracy

instruction:

> You are further instructed, with regard to the alleged conspiracy
> offense, that proof of several separate conspiracies is not proof
> of the single, overall conspiracy charged in the indictment
> unless one of the several conspiracies which is proved is the
> single conspiracy which the indictment charges.
>
> What you must do is determine whether the single conspiracy
> charged in the indictment existed between two or more
> conspirators. If you find that no such conspiracy existed, then
> you must acquit the Defendant[ ] of that charge. However, if you
> decide that such a conspiracy did exist, you must then
> determine who the members were; and, if you should find that a
> particular Defendant was a member of some other conspiracy,
> not the one charged in the indictment, then you must acquit
> th[e] Defendant.
>
> In other words, to find a Defendant guilty you must unanimously
> find that such Defendant was a member of the conspiracy
> charged in the indictment and not a member of some other
> separate conspiracy.

*Richardson,* 532 F. 3d at 1290 (quoting Eleventh Circuit Pattern Jury

Instructions (Criminal) 13.3).   The *Richardson* court expressed "doubt that

the requested charge, whose language seems to require an acquittal upon

a finding of multiple conspiracies, is ever appropriate where there is

sufficient evidence to establish a defendant's membership in at least one conspiracy within the scope of the indictment."   *Id.* at 1290.   Such an instruction, the court found, is "intended for use in cases charging *multiple* defendants with a single conspiracy."   *Id.* at 1291 (emphasis in original). The court also noted that at least one circuit court considered a multiple conspiracies instruction inappropriate in the trial of a single defendant, and it was aware of no case finding that failure to give such an instruction in a single-defendant case was fatal error.   It ultimately held that the multiple conspiracies instruction was neither necessary nor appropriate.   Based on *Richardson*, a multiple conspiracy instruction likely would not have been appropriate.[3]

Finally, the court notes that Adams argued on appeal that there was a material variance from his indictment because the Government introduced evidence of multiple conspiracies.   *Adams*, 666 Fed. App'x at 860; ECF No. 166 at 4-5.   The Eleventh Circuit found substantial evidence supported the conclusion that there was a single conspiracy of which Adams was the hub.   *Id.* at 861; ECF No. 166 at 6.   It concluded that Adams had not

---

[3] The court noted at sentencing that it had not given a multiple conspiracy instruction and none had been requested.   ECF No. 159 at 24.

shown a material variance from the indictment, and as such he was not entitled to reversal.

Adams has not shown based on the record as a whole that no reasonable attorney would have declined to request a multiple conspiracy instruction.   Therefore, he has not shown counsel's performance was constitutionally deficient.

### III.    CONCLUSION

An evidentiary hearing is not necessary to resolve Adams' claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.   For the foregoing reasons, the court finds that Adams has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, his supporting memorandum, or his reply to the Government's response has merit.   He simply has not met his burden of showing that his attorney's actions or omissions deprived him of a fair trial, or that counsel's performance was constitutionally inadequate.   Therefore, his motion should be denied in its entirety.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 90) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 7th day of January, 2020.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS